# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DUANE NICKELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-03193-TWP-MPB |
| | ) | |
| FRANKLIN TOWNSHIP COMMUNITY SCHOOL CORPORATION, | ) ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

This matter is before the Court on a Motion for Preliminary Injunction filed pursuant to Federal Rule of Civil Procedure 65 by Plaintiff Duane Nickell ("Dr. Nickell") (Filing No. 10). Dr. Nickell challenges the constitutionality of the policy and practice of offering prayers at the beginning of school board meetings held by Defendant Franklin Township Community School Corporation ("FTCSC"). He seeks a declaration that the prayer practice violates the First Amendment and an injunction prohibiting the school board from offering a prayer at the beginning of its public meetings. For the following reasons, Dr. Nickell's Motion for Preliminary Injunction must be **denied**.

## I. BACKGROUND

Dr. Nickell has taught physics and mathematics at various high schools in Marion County, Indiana and has taught physics at Franklin Central High School (the high school within FTCSC) ("the School") since 2001. In addition to teaching high school, Dr. Nickell has been an adjunct faculty member at Indiana University Purdue University Indianapolis since 1988. Dr. Nickell is interested in the affairs of FTCSC, has attended school board meetings in the past, and since September of 2016, has regularly attended school board meetings. He plans to continue attending

school board meetings. Dr. Nickell retired from his work as a teacher within FTCSC in June 2017 ([Filing No. 33](#)).

FTCSC is a public school corporation in Marion County, Indiana, which operates seven elementary schools, two middle schools, and one high school. The Board of School Trustees (the "School Board") is the governing body of FTCSC. The School Board approves budgets, sets policies for the district after deliberations, appoints members to committees, and can impact taxes assessed in the district. The members of the School Board are elected officials who serve four-year terms.

The School Board holds monthly meetings, which are open to the public. These meetings are held on school property. Approximately once per calendar year, the School Board invites a handful of students to its meeting to be recognized for winning awards or to present ideas. Students rarely attend School Board meetings and are never required to do so. In 2016, no students or student groups were invited to attend, and in 2015, two student groups were invited to attend. However, not all students who are invited to be recognized at a meeting actually attend the meeting.

The School Board begins each regular, monthly meeting with a prayer given by one of the School Board members. The prayers are Christian in orientation, mentioning "Jesus" or "Christ". The prayers primarily seek wisdom and guidance for School Board members. As a regular agenda item, the prayer is given by a member of the School Board after the "call to order". Since at least 1986, the School Board's prayer practice always occurs at the beginning of the meeting after the call to order and before the mission statement is read. The prayer practice consists of having a School Board member offer a prayer of his or her own choice on a rotating basis. FTCSC does not control the content of any School Board member's prayer and has no policy establishing what type of prayer is or is not allowed. Likewise, there is no policy of nondiscrimination.

The School Board member offering the prayer prays aloud while standing at the front of the meeting room. The prayer practice does not involve asking the audience to participate. During the prayer, audience members respond in a variety of ways. Individuals who attend the meetings generally are quiet during the prayer, and some individuals bow their head.

On November 22, 2016, Dr. Nickell filed a Complaint requesting declaratory judgment and injunctive relief for violations of the First Amendment based on the Christian prayers offered at FTCSC's public School Board meetings. Dr. Nickell objects to prayers being given in the public School Board meeting setting. He believes the prayers send a message of non-inclusion to members of the community who are not Christian. Soon after filing his Complaint, Dr. Nickell filed his Motion for Preliminary Injunction.

## II. LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). Granting a preliminary injunction is "an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 389 (7th Cir. 1984) (citation and quotation marks omitted). When a district court considers whether to issue a preliminary injunction, the party seeking the injunctive relief must demonstrate that:

> (1) it has a reasonable likelihood of success on the merits of its claim; (2) no adequate remedy at law exists; (3) it will suffer irreparable harm if preliminary injunctive relief is denied; (4) the irreparable harm it will suffer without preliminary injunctive relief outweighs the irreparable harm the nonmoving party will suffer if the preliminary injunction is granted; and (5) the preliminary injunction will not harm the public interest.

*Platinum Home Mortg. Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 726 (7th Cir. 1998). The greater the likelihood of success, the less harm the moving party needs to show to obtain an

injunction, and vice versa. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America, Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008).

## III. DISCUSSION

Dr. Nickell seeks a preliminary injunction prohibiting FTCSC from continuing its prayer practice at the beginning of its public School Board meetings. The majority of his argument focuses on the element of a likelihood of success on the merits, pointing to numerous United States Supreme Court decisions as well as decisions from the Seventh Circuit. Dr. Nickell also points to decisions from courts outside the Seventh Circuit. His argument focuses on the prohibition against coercive school prayer in various school settings, and he describes how the facts in this case closely align with the circumstances found in the unconstitutional school prayer cases. Focusing on these similarities, Dr. Nickell asserts that he has a high likelihood of success on the merits and also contends that he can meet the other necessary elements to obtain a preliminary injunction.

In contrast, FTCSC argues that the facts in this case closely align with the facts in cases where legislative prayer was found to be permissible. FTCSC asserts that Dr. Nickell's cited cases are inapplicable because those cases were brought on behalf of students, and the decisions were based on the principle of preventing the coercion of young students. In this case, Dr. Nickell is not bringing his claim on behalf of students.

FTCSC contends that Dr. Nickell lacks standing to pursue this claim, and thus, this case must be dismissed for lack of subject-matter jurisdiction. Because this is a threshold issue that is dispositive of this action, the Court focuses the remainder of this Order on the issue of standing.

"The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Kowalski v. Tesmer*, 543 U.S. 125, 128 (2004) (citation

4

and quotation marks omitted). Where a "plaintiff lacks standing to bring suit against the defendant, [] the federal court lacks subject-matter jurisdiction to adjudicate the matter." *Johnson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 719 F.3d 601, 602 (7th Cir. 2013). The party invoking federal jurisdiction has the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Under the case and controversy requirement for standing, a plaintiff must show: (1) an "injury in fact" that is both "(a) concrete and particularized," and "(b) actual or imminent, not 'conjectural' or 'hypothetical;'" (2) "a causal connection between the injury and the conduct complained of," that is, "the injury has to be fairly traceable to the challenged action of the defendant;" and (3) it is likely that a favorable decision will redress the injury. *Id.* at 560–61. A plaintiff can establish actual injury under three distinct theories of standing: (1) taxpayer, (2) direct harm, or (3) imposition of a cost or denial of a benefit. *Freedom from Religion Found., Inc. v. Lew*, 773 F.3d 815, 820 (7th Cir. 2014).

Dr. Nickell does not dispute FTCSC's argument that he cannot claim standing as a taxpayer or because he was denied a benefit or incurred a cost. The parties acknowledge that Dr. Nickell must establish standing by showing a direct harm. FTCSC asserts that Dr. Nickell has no standing because he has not suffered any injury; rather, he is filing suit as a general member of the public who is invited to attend public School Board meetings. FTCSC contends that because Dr. Nickell has no particularized injury, this Court lacks subject-matter jurisdiction.

Dr. Nickell notes that the Seventh Circuit has held in Establishment Clause cases that direct injury is found when a party "must come in direct and unwelcome contact" and is "forced to view a religious object that he wishes to avoid but is unable to avoid because of his right or duty to

5

attend the government-owned place where the object is located." *Books v. City of Elkhart* ("*Books I*"), 235 F.3d 292, 300–01 (7th Cir. 2000).

Dr. Nickell notes there is no dispute that he attends School Board meetings and will continue to do so, and he will continue to come into "direct and unwelcome contact" with the School Board's prayer each time he attends the meeting. *Books v. City of Elkhart* ("*Books II*"), 401 F.3d 857, 861 (7th Cir. 2005). He asserts that his direct and unwelcome contact with the School Board's prayer at meetings provides sufficient evidence to establish standing.

FTCSC attempts to undermine this evidence by pointing out that Dr. Nickell was employed as a teacher within FTCSC at Franklin Central High School beginning in 2001; however, he retired from his employment with FTCSC in June 2017. They note that Dr. Nickell's two adult children have already graduated from Franklin Central High School, so he has no children who are students in FTCSC. Dr. Nickell does not live in Franklin Township. He cannot vote for the School Board members or for FTCSC matters. During his sixteen years of employment with the School, Dr. Nickell attended one regular School Board meeting in 2002 and started attending meetings in September 2016 when he saw on the School Board's agenda that the meetings open with prayer. FTCSC argues that Dr. Nickell has not suffered any direct harm or been injured by the practices of the School or the School Board.

Relying on *American Civil Liberties Union of Illinois v. City of St. Charles*, 794 F.2d 265, 268 (7th Cir. 1986), FTCSC asserts that Dr. Nickell cannot show an injury in fact because he has not had to take special efforts to avoid a religious symbol or object that was placed on public grounds. They argue that just the opposite is true; Dr. Nickell altered his schedule to encounter the School Board meeting prayers. Attending School Board meetings was never part of Dr.

6

Nickell's employment, he attended only one School Board meeting in the first fifteen years of his employment with FTCSC, and he no longer works for FTCSC.

FTCSC further asserts that Dr. Nickell cannot show that it was mandatory for him to participate in the School Board meeting prayer. In his deposition testimony, Dr. Nickell states that he was never asked to participate in prayers, he feels no pressure to participate, and in fact does not participate in prayers (Filing No. 19-3 at 12–13). Relying on *Lew*, 773 F.3d at 819, FTCSC points out that the Seventh Circuit recently held that "a plaintiff cannot establish standing based solely on being offended by the government's alleged violation of the Establishment Clause." FTCSC argues the "harm [Dr. Nickell] alleges is a general grievance about government, and such a grievance is not considered an injury for standing purposes. *Lew*, 773 F.3d at 819; *see also Lujan*, 504 U.S. at 560; *Valley Forge Christian Coll.*, 454 U.S. at 490-91." (Filing No. 18 at 12.)

FTCSC points out that *Books I* and *Books II* involve government displays of religious objects where "plaintiffs [are] required to come in direct and unwelcome contact with the religious display in order to participate fully in government and to fulfill their legal obligations." *Books I*, 235 F.3d at 300. FTCSC asserts this reasoning does not apply here because Dr. Nickell is not a Franklin Township resident, so he is not deprived of petitioning his elected officials. Additionally, Dr. Nickell has no legal obligation to attend the School Board meetings. FTCSC contends that Dr. Nickell began attending School Board meetings after inquiring into a prayer practice with which he disagrees. He does not participate in the meetings. Because Dr. Nickell does not attend the School Board meetings to participate in government or fulfill a legal obligation, FTCSC argues he does not have standing under *Books I* and *Books II*.

The Court concludes that Dr. Nickell lacks standing to support this action because he has not suffered an actual, concrete, and particularized injury; rather, he has asserted a general

7

grievance about government. Important are the facts that Dr. Nickell does not live in Franklin Township, he cannot vote for the School Board members, and he cannot vote on FTCSC matters. He has no children who are students within FTCSC. Although he was recently employed as a teacher by FTCSC, he retired in June 2017 and no longer is an employee of FTCSC. In short, there is no link, connection, or relationship between Dr. Nickell and FTCSC.

Because the School Board meetings are open to the public, Dr. Nickell is permitted to attend the meetings even though he has no relationship with FTCSC. While attending the meetings, he may come into undesired contact with the School Board prayers. However, in attending the meetings, Dr. Nickell is not participating in his government or fulfilling his legal obligations. As such, this lawsuit is in the nature of a general member of the public complaining of a general grievance of government. Thus, Dr. Nickell lacks standing to bring this action, and the Court lacks subject-matter jurisdiction to hear this case.

## IV. CONCLUSION

"From Article III's limitation of the judicial power to resolving 'Cases' and 'Controversies'," and the separation-of-powers principles underlying that limitation, [the Supreme Court] ha[s] deduced a set of requirements that together make up the 'irreducible constitutional minimum of standing.'" *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Dr. Nickell is unable to overcome the procedural hurdle of standing, therefore this Court lacks subject-matter jurisdiction. Dr. Nickell's Motion for Preliminary Injunction ([Filing No. 10](#)) must be **DENIED** and this action is **dismissed**. Final judgment will issue under separate order.

**SO ORDERED**.

Date: 8/17/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

| | |
|---|---|
| Kenneth J. Falk<br>ACLU OF INDIANA<br>kfalk@aclu-in.org | Jonathan Lamont Mayes<br>BOSE MCKINNEY & EVANS, LLP<br>jmayes@boselaw.com |
| Jan P. Mensz<br>ACLU OF INDIANA<br>jmensz@aclu-in.org | Mark Wohlford<br>BOSE MCKINNEY & EVANS, LLP<br>mwohlford@boselaw.com |